Ross K. Reghabi, Esq. / Bar # 206339
**SOUTHERN CALIFORNIA LAW GROUP**
24007 Ventura Boulevard, Suite 205
Calabasas, California 91302
E-mail:            reghabi@scalg.com
Telephone:    (747)333-5151
Facsimile:     (818)584-3169

Attorney for Plaintiffs, Emperor Entertainment, et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMPEROR ENTERTAINMENT, INC., a California Corporation; HAMIDREZA POUSTI, an individual,<br><br>                    Plaintiffs,<br><br>          vs.<br><br><br>DEFYNE HOLDINGS, LLC., a limited liability company; FRANCESCO DiSTEFANO, an individual; DiSTEFANO ENTERPRISES, LLC., a limited liability company;  KASH CAPITAL, LLC., a limited liability company; HSBC BANK USA, NATIONAL ASSOCIATION, a business organization form unknown; and DOES 1 through 50, Inclusive,<br><br>          Defendants. | CASE NO: 2:20-cv-0026-GW-MAA<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES:<br><br>1.  BREACH OF CONTRACT;<br>2.  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;<br>3.  INTENTIONAL MISREPRESENTAION AND FRAUD;<br>4.  NEGLIGENCE MISREPRESENTATION;<br>5.  CONVERSION.<br>6.  VIOLATION OF BUSSINESS & PROFESSIONAL CODE, § 17200; |

          COME NOW Plaintiffs who complain and allege against Defendants, and each of them, as follows:

- 1 -

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1.   At all times herein mentioned, Plaintiff, **Emperor Entertainment, Inc.,** (hereinafter "**Emperor**"), was and now is a California Corporation, formed under the laws of the State of California with its principal place of business in the County of Los Angeles, State of California.

2.   At all times herein mentioned, Plaintiff, **Hamidreza Pousti,** (hereinafter "**Pousti**"), was and now is a resident of the County of Los Angeles, State of California and an operator of Emperor.

3.   At all times herein mentioned, Defendant **Defyne Holding, LLC.,** (hereinafter "**Defyne**") was and now is a limited liability company formed in Georgia and doing business in California and various states, through its agents, as Defyne Payments, engaged in the credit card processing services business.  At all times herein mentioned, Defyne represented it was a registered ISO of Wells Fargo Bank, N.A., in California.

4.   At all times herein mentioned, Defendant **Francesco DiStefano**, (hereinafter "**DiStefano**"), was and now an individual acting in California as agent and employee of the other named Defendant and various Defendants named herein as DOES.  At all times herein mentioned, Defendant DiStefano was also the owner and operator of DiStefano Enterprises, LLC.

5.   At all times herein mentioned, Defendant DiStefano was within the course and scope of his employment as an agent and employee of other named and un-named Defendants.

6.   At all times herein mentions, Defendant **DiStefano Enterprises, LLC.,** (hereinafter **"DiStefano, LLC."**) was and now is a Limited Liability Company, representing itself as "Payment Logistics" and doing business in California and various states, on behalf of other Defendants, herein and owned and operated by Defendant DiStefano.

7.   At all times herein mentioned, Defendant **Kash Capital, LLC.,** (hereinafter **"Kash"**) was and now is a Limited Liability Company, representing itself as credit card

fund transfer service and doing business in California and various states, on behalf of other Defendants herein.

8.   At all times herein mentioned, Defendant **HSBC Bank USA, National Association** (hereinafter **"HSBC"**) was and now is a business organization form unknown with branches in every state and engaged in the banking business doing business in California.

9.   Plaintiffs are ignorant of the true names and capacities, whether individual, corporate, associate, partnership, or otherwise of each of the Defendants sued herein as Does 1 through 50, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to reflect their true names and capacities as they are ascertained pursuant to Code of Civil Procedure §474.

10. Plaintiffs are informed and believe and, based upon such information and belief, allege that each of the Defendants named herein as a Doe was and is negligently, intentionally, or both negligently and intentionally responsible in some manner for the occurrences herein alleged, and the injuries and/or damages suffered by Plaintiffs as herein alleged were the direct and proximate result of, and caused by the acts and omissions of the Defendants.

11. Plaintiffs are informed and believe and, based upon such information and belief, allege that at all times herein mentioned, each and every one of the Defendants was and now is the agent, servant, or employee of each and every other Defendant and was in doing the things herein alleged, acting within the course and scope of said agency, service or employment.

12. Plaintiffs are informed and believe and, based upon such information and belief, allege that at all times herein mentioned, each of the Defendants ratified and approved the acts, omissions, representations, and other activities of each and every other Defendant.

13. In or about August 2019, Defendant DiStefano, as an agent of Defendant Defyne, approached Plaintiff Pousti, the operator of Emperor and offered to establish a merchant account for Emperor to process the credit card charges of Emperor's business through

Defyne.  Defendant DiStefano clearly represented to Plaintiff Pousti that he was acting on behalf of Defendant Defyne.  Plaintiffs agreed to have a credit card processing agreement established between Emperor and Defyne.

14. Subsequent to agreeing to establish the credit card processing account, Defendant DiStefano acting on behalf of Defyne represented to Plaintiffs that he could secure a business loan of approximately $1,000,000.00 for Plaintiff through Defyne Payments.  He further represented that the loan which would be processed by Defyne, would be conducted through Defendant HSBC and that when the loan was secured, the funds would be transferred to Plaintiffs by Defyne and HSBC.  DiStefano further represented to Plaintiffs that he and Defyne work with HSBC on regular basis and obtain loans for Defyne clients.

15. The negotiations between DiStefano on behalf of Defyne, and Plaintiff lasted for 2 to 3 months during which DiStefano represented to Plaintiff that both he on behalf of Defyne, and Defyne on its behalf were working with HSBC to secure the loan and that the loan would be secured "very soon."

16. During the 2 to 3 months period where, by DiStefano's representation, the loan was allegedly being processed, DiStefano stated to Plaintiff Pousti that in order to make sure the loan would be secured, various fees had to be paid in different installments so that Defyne would be able to secure the loan.

17. Believing the representation made by DiStefano to be true and with reasonable reliance, Plaintiff Pousti paid DiStefano in excess of $55,000.00 when DiStefano presented various documents to Plaintiff showing the loan was being process and was about to be approved.  Defendant presented Pousti documents showing a transfer of $985,000.00 to Plaintiff's bank account.  Pousti believed Defendant and alleges DiStefano embezzled the $55,000.00 from him by fraud.

18. At all times herein mentioned, DiStefano on behalf of Defyne, sent various text messages to Pousti regarding the approval of the $985,000.00 business loan, along with other documents showing the funds were being wired to Plaintiff's bank account.

- 4 -

19. As a direct and proximate result of DiStefano's representation, that the business loan would be forthcoming, Pousti entered into numerous contracts with its special customers and clients for events at Cabaret Tehran, Emperor's place of business. Plaintiff Pousti further purchased new kitchen and other equipment for the business.

20. When Plaintiff Pousti confronted DiStefano regarding the length of time it was taking for the loan to be approved, and after Plaintiff Pousti had invested funds in the business upon reasonable reliance on DiStefano's representation, DiStefano presented Plaintiff with a HSBC credit card which he stated had been given to him by Defyne to be used and informed Plaintiff that he could use the credit card for some of the expenses until the loan is actually secured.

21. The true facts are that any and all representations made to Plaintiffs by Defendant DiStefano, as agent and/or employee of Defyne, which representation were made within the course and scope of his employment, were false.

22. In reality the representations of Defendant DiStefano, and each of them, were false and the true facts were that Defendants did not intend to perform as promised.

23. Defendant DiStefano knew the representations made to Plaintiffs to be false at all times herein mentioned.

24. These representations of DiStefano were made with the intent to induce Plaintiffs to rely on them and to induce Plaintiffs to enter into the contract as herein alleged, with the intent to defraud and deceive Plaintiffs.

25. Plaintiffs relied on the representations and was induced by them to sign what it believed to be true. Plaintiffs would not have signed the document if the true facts had been known to them.

**FIRST CAUSE OF ACTION**

**FOR BREACH OF CONTRACT**

**Against All Defendants**

- 5 -

26. Plaintiffs alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 25 of the First Amended Complaint as though set forth at length herein.

27. In or about August 2019, Defendant DiStefano, as an agent of Defendant Defyne, approached Plaintiff Pousti, the operator of Emperor and offered to establish a merchant account for Emperor to process the credit card charges of Emperor's business through Defyne.  Defendant DiStefano clearly represented to Plaintiff Pousti that he was acting on behalf of Defendant Defyne.  Plaintiffs agreed to have a credit card processing agreement established between Emperor and Defyne.

28.  Subsequent to agreeing to establish the credit card processing account, Defendant DiStefano acting on behalf of Defyne represented to Plaintiffs that he could secure a business loan of approximately $1,000,000.00 for Plaintiff through Defyne Payments.  He further represented that the loan which would be processed by Defyne, would be conducted through Defendant HSBC and that when the loan was secured, the funds would be transferred to Plaintiffs by Defyne and HSBC.  DiStefano further represented to Plaintiffs that he and Defyne work with HSBC on regular basis and obtain loans for Defyne clients.

29. The negotiations between DiStefano, acting on his behalf and on behalf of Defyne, and Plaintiff lasted for 2 to 3 months during which DiStefano represented to Plaintiff that both he on his behalf and Defyne on its behalf were working with HSBC to secure the loan and that the loan would be secured "very soon."

30. During the 2 to 3 months period where, by DiStefano's representation, the loan was allegedly being processed, DiStefano stated to Plaintiff Pousti that in order to make sure the loan would be secured, various fees had to be paid in different installments so that Defyne would be able to secure the loan.

31. Believing the representation made by DiStefano to be true and with reasonable reliance, Plaintiff Pousti paid DiStefano in excess of $55,000.00 when DiStefano presented various documents to Plaintiff showing the loan was being processed and was

- 6 -

about to be approved. Defendant presented Pousti documents showing a transfer of $985,000.00 to Plaintiff's bank account. Pousti believed Defendant and alleges DiStefano embezzled the $55,000.00 from him by fraud.

32. At all times herein mentioned, Defendant Distefano acting on behalf of Defyne, sent various text messages to Pousti regarding the approval of the $985,000.00 business loan, along with other documents showing the funds were being wired to Plaintiff's bank account.

33. As a direct and proximate result of DiStefano's representation, that the business loan would be forthcoming, Pousti entered into numerous contracts with its special customers and clients for events at Cabaret Tehran, Emperor's place of business. Plaintiff Pousti further purchased new kitchen and other equipment for the business.

34. When Plaintiff Pousti confronted DiStefano regarding the length of time it was taking for the loan to be approved, and after Plaintiff Pousti had invested funds in the business upon reasonable reliance on DiStefano's representation, DiStefano presented Plaintiff with a HSBC credit card which he stated had been given to him by Defyne to be used and informed Plaintiff that he could use the credit card for some of the expenses until the loan is actually secured.

35. The true facts are that any and all representations made to Plaintiff by Defendant DiStefano, as agent and/or employee of Defyne, which representation were made within the course and scope of his employment, were false.

36. In reality the representations of Defendants Distefano and Defyne, and each of them, were false and the true facts were that Defendants DiStefano and Defyne did not intend to perform as promised.

37. Defendants Distefano and Defyne knew the representations made to Plaintiffs to be false at all times herein mentioned.

38. These representations of Defendants DiStefano and Defyne were made with the intent to induce Plaintiffs to rely on them and to induce Plaintiffs to enter into the contract as herein alleged, with the intent to defraud and deceive Plaintiffs.

39. Plaintiffs relied on the representations and were induced by them to sign what it believed to be true. Plaintiffs would not have signed the document if the true facts had been known to them.

40. At all times herein mentioned, Plaintiffs have performed or have been excused from performing all of the acts, conditions, and covenants required to be performed by them under the contract.

41. Defendants, DiStefano and Defyne, and each of them, have repeatedly breached the contract by reason of their actions as set forth herein above.

42. As a proximate result of Defendants Distefano's and Defyne's breach of contract, Plaintiffs have been damaged in an amount unknown at this time and according to proof at trial.

**SECOND CAUSE OF ACTION**

**FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**Against All Defendants.**

43. Plaintiffs allege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 42 of the First Amended Complaint as though set forth at length herein.

44. In or about August 2019, Defendant DiStefano, as an agent of Defendant Defyne, approached Plaintiff Pousti, the operator of Emperor and offered to establish a merchant account for Emperor to process the credit card charges of Emperor's business through Defyne. Defendant DiStefano clearly represented to Plaintiff Pousti that he was acting on behalf of Defendant Defyne. Plaintiffs agreed to have a credit card processing agreement established between Emperor and Defyne.

45. Subsequent to agreeing to establish the credit card processing account, Defendant DiStefano acting on his behalf and on behalf of Defyne, represented to Plaintiffs that he could secure a business loan of approximately $1,000,000.00 for Plaintiff through Defyne Payments. He further represented that the loan which would be processed by Defyne,

- 8 -

would be conducted through Defendant HSBC and that when the loan was secured, the funds would be transferred to Plaintiffs by Defyne and HSBC.  DiStefano further represented to Plaintiffs that he and Defyne work with HSBC on regular basis and obtain loans for Defyne clients.

46. The negotiations between DiStefano acting on behalf of Defyne and Plaintiff lasted for 2 to 3 months during which DiStefano represented to Plaintiff that both he and Defyne were working with HSBC to secure the loan and that the loan would be secured "very soon."

47. During the 2 to 3 months period where, by DiStefano's representation, the loan was allegedly being processed, DiStefano stated to Plaintiff Pousti that in order to make sure the loan would be secured, various fees had to be paid in different installments so that Defyne would be able to secure the loan.

48. Believing the representation made by DiStefano to be true and with reasonable reliance, Plaintiff Pousti paid DiStefano in excess of $55,000.00 when DiStefano presented various documents to Plaintiff showing the loan was being process and was about to be approved.  Defendant presented Pousti documents showing a transfer of $985,000.00 to Plaintiff's bank account.  Pousti believed Defendant and alleges DiStefano embezzled the $55,000.00 from him by fraud.

49. At all times herein mentioned, Distefano acting on behalf of Defyne sent various text messages to Pousti regarding the approval of the $985,000.00 business loan, along with other documents showing the funds were being wired to Plaintiff's bank account.

50. As a direct and proximate result of DiStefano's representation, that the business loan would be forthcoming, Pousti entered into numerous contracts with its special customers and clients for events at Cabaret Tehran, Emperor's place of business. Plaintiff Pousti further purchased new kitchen and other equipment for the business.

51.  When Plaintiff Pousti confronted DiStefano regarding the length of time it was taking for the loan to be approved, and after Plaintiff Pousti had invested funds in the business upon reasonable reliance on DiStefano's representation, DiStefano presented

- 9 -

Plaintiff with a HSBC credit card which he stated had been given to him by Defyne to be used and informed Plaintiff that he could use the credit card for some of the expenses until the loan is actually secured.

52. The true facts are that any and all representations made to Plaintiff by Defendant DiStefano, as agent and/or employee of Defyne, which representation were made within the course and scope of his employment, were false.

53. In reality the representations of Defendants DiStefano and Defyne, and each of them, were false and the true facts were that Defendants DiStefano and Defyne did not intend to perform as promised.  Defendants Distefano and Defyne knew the representations made to Plaintiffs to be false at all times herein mentioned.

54. These representations of Defendants DiStefano and Defyne were made with the intent to induce Plaintiffs to rely on them and to induce Plaintiffs to enter into the contract as herein alleged, with the intent to defraud and deceive Plaintiffs.

55. Plaintiffs relied on the representations and was induced by them to sign what it believed to be true.  Plaintiffs would not have signed the document if the true facts had been known to them.

56. In or about August 2019, Defendants, DiStefano and Defyne and each of them, breached their implied covenant of good faith and fair dealing in the contract they entered into with Plaintiffs.

57. Defendants DiStefano and Defyne, and each of them, unfairly interfered with Plaintiffs' right to receive the benefit of the contract because Defendants Distefano and Defyne and each of them had knowledge, or should have had knowledge but still failed to inform Plaintiffs of same.

58. As an actual and proximate result of the breach of the said covenant by Defendants and each of them as set forth above, Plaintiffs are harmed due to the fact that Plaintiffs were prevented from receiving the benefits of their agreement with Defendants.

- 10 -

1
2
3

**THIRD CAUSE OF ACTION**

**FOR INTENTIONAL MISREPRESENTATION AND FRAUD**

**Against All Defendants**

4     59. Plaintiffs allege and incorporate herein by reference each and every allegation

5 contained in paragraphs 1 through 58 of the First Amended Complaint as though set forth

6 at length herein.

7     60. In or about August 2019, Defendant DiStefano, as an agent of Defendant Defyne,

8 approached Plaintiff Pousti, the operator of Emperor and offered to establish a merchant

9 account for Emperor to process the credit card charges of Emperor's business through

10 Defyne.  Defendant DiStefano clearly represented to Plaintiff Pousti that he was acting on

11 behalf of Defendant Defyne.  Plaintiffs agreed to have a credit card processing agreement

12 established between Emperor and Defyne.

13     61. Subsequent to agreeing to establish the credit card processing account, Defendant

14 DiStefano represented to Plaintiffs that he could secure a business loan of approximately

15 $1,000,000.00 for Plaintiff through Defyne Payments.  He further represented that the

16 loan which would be process by Defyne, would be conducted through Defendant HSBC

17 and that when the loan was secured, the funds would be transferred to Plaintiffs by Defyne

18 and HSBC.  DiStefano further represented to Plaintiffs that he and Defyne work with

19 HSBC on regular basis and obtain loans for Defyne clients.

20     62. The negotiations between DiStefano and Plaintiff lasted for 2 to 3 months during

21 which DiStefano represented to Plaintiff that both he and Defyne were working with

22 HSBC to secure the loan and that the loan would be secured "very soon."

23     63. During the 2 to 3 months period where, by DiStefano's representation, the loan was

24 allegedly being processed, DiStefano stated to Plaintiff Pousti that in order to make sure

25 the loan would be secured, various fees had to be paid in different installments so that

26 Defyne would be able to secure the loan.

27     64. Believing the representation made by DiStefano to be true and with reasonable

28 reliance, Plaintiff Pousti paid DiStefano in excess of $55,000.00 when DiStefano

presented various documents to Plaintiff showing the loan was being process and was about to be approved.  Defendant presented Pousti documents showing a transfer of $985,000.00 to Plaintiff's bank account.  Pousti believed Defendant and alleges DiStefano embezzled the $55,000.00 from him by fraud.

65. At all times herein mentioned, Defendant sent various text messages to Pousti regarding the approval of the $985,000.00 business loan, along with other documents showing the funds were being wired to Plaintiff's bank account.

66. As a direct and proximate result of DiStefano's representation, that the business loan would be forthcoming, Pousti entered into numerous contracts with its special customers and clients for events at Cabaret Tehran, Emperor's place of business. Plaintiff Pousti further purchased new kitchen and other equipment for the business.

67. When Plaintiff Pousti confronted DiStefano regarding the length of time it was taking for the loan to be approved, and after Plaintiff Pousti had invested funds in the business upon reasonable reliance on DiStefano's representation, DiStefano presented Plaintiff with a HSBC credit card which he stated had been given to him by Defyne to be used and informed Plaintiff that he could use the credit card for some of the expenses until the loan is actually secured.

68. The true facts are that any and all representations made to Plaintiff by Defendant DiStefano, as agent and/or employee of Defyne, which representation were made within the course and scope of his employment, were false.

69. In reality the representations of Defendants, and each of them, were false and the true facts were that Defendants did not intend to perform as promised.  Defendants knew the representations made to Plaintiffs to be false at all times herein mentioned.

70. These representations of Defendants were made with the intent to induce Plaintiffs to rely on them and to induce Plaintiffs to enter into the contract as herein alleged, with the intent to defraud and deceive Plaintiffs.

71. Plaintiffs relied on the representations and was induced by them to sign what it believed to be true.  Plaintiffs would not have signed the document if the true facts had been known to them.

72. Misrepresentation or otherwise failure to disclose material facts by Defendants, and each of them was with the intent to induce reliance on the part of Plaintiffs to enter into the agreement. Plaintiffs relied on the representations and was induced by them to sign what it believed to be true.

73. Plaintiffs would not have entered into the agreement if the true facts had been known to them.

74. As a direct and proximate result of Defendants', and each of them, intentional failure to disclose their true intents, Plaintiffs have been harmed and suffered damages in an amount according to proof at the time of trial.

75. In doing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud, and malice entitling Plaintiff to punitive damages in the sum according to proof at the time of trial.

**FOURTH CAUSE OF ACTION**

**FOR NEGLIGENT MISREPRESENATION**

**Against All Defendants**

76. Plaintiffs alleges and incorporate herein by reference each and every allegation as contained in paragraphs 1 through 75 of the First Amended Complaint as though set forth at length herein.

77. Defendants made the representations to Plaintiffs that Defendants, and each of them, would protect Plaintiffs' interest with no reasonable grounds for believing them to be true, in that Plaintiffs are informed and believe, and based on such information and belief, allege that Defendants did not communicate to Plaintiffs accurate information and negligently failed to fulfil their duty to Plaintiffs as grantors, to communicate to Plaintiffs knowledge they had, or should have had. Defendants, at least, negligently failed and refused to do so.  Therefrom, Defendants were aware that without such information they

- 13 -

could not accurately make the representations herein alleged; and at all times thereafter, Defendants concealed from Plaintiff their true intentions and did not make the alleged representations accurately. Defendants, and each of them, in failing to disclose material facts to Plaintiffs had reasonable grounds to believe that the omitted facts were in fact untrue and failed to disclose with the intent to induce reliance on the part of Plaintiffs to enter the agreement.

78. As a direct and proximate result of Defendants' conduct and failure, Plaintiffs have been harmed/suffered major loss of its property in an amount according to proof at the time of trial.

79. Plaintiffs' reliance on Defendants' negligent misrepresentation was substantial factor in causing harm to Plaintiffs due to the fact that had Plaintiffs been aware of proper information, Plaintiffs would have never relied and agreed to enter into the agreement.

**FIFTH CAUSE OF ACTION**

**FOR CONVERSION**

**Against All Defendants Distefano and Defyne**

80. Plaintiffs allege and incorporate herein by reference each and every allegation as contained in paragraphs 1 through 79 of the First Amended Complaint as though set forth at length herein.

81. At all times herein mentioned, Defendants DiStefano and Defyne, and each of them, had a legal duty to maintain all funds received from Plaintiffs, including but not limited to the $55,000.00 in cash towards securing the promised business loan.

82. Plaintiffs are informed and believe and, based on such information and belief, allege that Defendants DiStefano and Defyne, have converted said funds for their own use and benefit by refusing to repay the $55,000.00.

83. Commencing August 2019 through present, Defendants, and each of them, have converted the funds provided to them which acts constituted an actual and substantial interference with plaintiffs' right of ownership and possessory interests in the funds.

84. Between the time of Defendants' conversion and the filing of this action, Plaintiffs properly expended in pursuit of the property exclusive of attorney's fees and costs associated with preparation for litigation in an amount according to proof at trial.

85. Plaintiffs have duly demanded that Defendants, named in this cause of action, return said funds, but Defendants have failed and refused, and continue to fail and refuse, to make such payments and return such assets.

**SEVENTH CAUSE OF ACTION**

**FOR UNFAIR BUSINESS PRACTICES UNDER BUSINESS AND PROFESSION CODE 17200, ET SEQ.**

**Against All Defendants**

86. Plaintiffs allege and incorporates herein by reference each and every allegation contained in paragraphs 1 through 85 of the First Amended Complaint as though set forth at length herein.

87. Defendants, and each of them committed unlawful, unfair, and fraudulent business practices or acts, as defined by *Business and Professions Code Section 17200,* and as set forth herein.

88. Pursuant to section 503 of the California Penal Code, "[e]mbezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted."

89. Defendant Defyne employed DiStefano and during and within the scope of such engagement Defendants Defyne and DiStefano took funds which were entrusted to them. Defendant Defyne and DiStefano's actions were unlawful. Defendants received the benefit of the agreement with Plaintiffs while engaging in the unfair business practice of receiving unlawful monies while failing to disclose to Plaintiff the unlawful activity.

90. Defendants DiStefano' and Defyne's conduct in holding themselves out as competent and duly licensed credit card processing company and a business loan broker was an unfair business practice in that they unlawfully rendered professional services and received monies to which they were not entitled as a matter of law.

- 15 -

FIRST AMENDED COMPLAINT

91. Plaintiffs entered into the agreement with Defendants in reliance on the mistaken belief that it was represented by a qualified and duly licensed business opportunities broker.

92. Plaintiffs allege that Defendants, and each of them, in doing the acts alleged herein above have engaged in unfair and or unlawful business practices by engaging in such unfair business practices, thereby inducing and causing Plaintiffs to suffer "injury in fact" and to lose money or property rights as a result of such unfair acts, in violation of the Act.

93. Plaintiffs further allege the conduct of Defendants Distefano and Defyne were fraudulent and misleading, as more fully alleged in the paragraphs alleged above.

94. As a direct and proximate result of the above-referenced acts of Defendants and Does 1-50, and each of them, Plaintiffs sustained "injury in fact" and lost money or property as a result of such unfair acts [*Business & Professions Code* section 17204], and are therefore entitled to restitution of money lost as a result of Defendants' unfair business practices as well as equitable relief in the form of an order requiring defendants, and each of them, to show cause, if any they have, why they should not be enjoined from continuing their unlawful business practices during the pendency of this action, and for a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants and Does 1-50, and each of them from engaging in the unlawful business practices described herein.

95. Plaintiffs also seek exemplary damages by this Honorable Court in order to deter Defendants' and each of them future conduct in the amount to be determined at the time of trial.

**WHEREFORE**, Plaintiffs demand judgment against defendants, and each of them, for the following:

**Damages as to All Causes of Action:**

1. Compensatory Damages;

2. Interest according to legal rate of 10% per annum or as provided by law;

3. Reasonable Attorney's fees;

4.  Injunctive Relief;

5.  Punitive and exemplary Damages;

6.  Restitution;

7.  Cost of lawsuit; and

8.  Such further relief as court deemed appropriate.

Dated: January 14, 2020

SOUTHERN CALIFORNIA LAW GROUP

By: _____
Ross K. Reghabi, Esq.,
Attorney for Plaintiffs,
Emperor Entertainment, Inc., and Hamidreza Pousti

- 17 -

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My address is 24007 Ventura Boulevard, Suite 205, Calabasas, California 91302, which is located in Los Angeles County where the mailing described below, occurred.

On January 16, 2020, at my place of business at Calabasas, California, I placed the following document: **PLAINTIFFS' FIRST AMENDED COMPLAINT** on the interested parties in this action, in the manner indicated below, and addressed to:

**SEE ATTACHED SERVICE LIST**

**(XX) By MAIL:** I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected, and processes is deposited with the United States Postal Service that same day in the ordinary course of business.

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 16, 2020

SOUTHERN CALIFORNIA LAW GROUP

STEVEN RUIZ

- 1 -



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**

Scott B. Lieberman                    Attorney for Defendant
**Finlayson Toffer Roosevelt & Lilly LLP**
15615 Alton Parkway, Suite 250
Irvine, CA 92618

- 2 -